# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 15 CR 15 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| ALVIN EDGEWORTH, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

After a jury trial, Defendant Alvin Edgeworth ("Defendant") was convicted of brandishing a firearm in the commission of a bank robbery in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2113(a), respectively. Before the Court is Defendant's post-trial motion filed pursuant to Federal Rules of Criminal Procedure 29 and 33. For the following reasons, the motion is denied.

## I. BACKGROUND

In the early afternoon on January 9, 2015, the Belmont Bank & Trust's downtown location was robbed. The robber walked into the branch location wearing a yellow construction hat, an orange neck warmer wrapped around his face and nose, an orange safety vest, a grey sweatshirt, and carrying a bag. The robber approached a teller, pointed the barrel of a handgun in the teller's direction, and made a verbal demand for money followed by a verbal threat. The teller responded by removing a few bundles of cash, which included a GPS tracking device, from his teller drawer and handing it to the masked robber standing about three feet away. The robber put the cash, which totaled about $3,000, and his handgun in his bag and walked out of the store. These events were captured on a security camera located a few feet above the teller's banking

station. Although the robber's face was not directly visible from the viewpoint of the camera, the gun and the robbery were clearly recorded.

After the robber left, the teller called 911, and the branch manager pushed the bank alarm. Local and federal law enforcement responded almost immediately, and within ten minutes, a person matching the teller's description of the robber was located running south on State Street. Law enforcement's pursuit of the individual led to an underground train platform, where the individual attempted to flee via the train tracks. Law enforcement apprehended the individual on the train tracks, returned him safely to the platform, and performed a search incident to his arrest. Law enforcement recovered a loaded revolver from the individual's waistband. In the individual's bag were the bank's stolen money, the bank's GPS tracker, and the construction outfit that matched the teller's description. The individual identified himself as Alvin Edgeworth, the Defendant.

Soon after Defendant was in custody, law enforcement returned to the Belmont Bank with him. The teller confirmed that Defendant matched the height, weight, gender, and race of the robber. Because the perpetrator covered his face with the orange neck warmer during the robbery, the teller could not identify Defendant by his facial features. The teller did confirm, however, that the construction clothes found in Defendant's bag exactly matched those worn by the robber.

After Defendant was identified as the bank robber, law enforcement took him to the station for booking. Law enforcement reviewed photographs contained in their internal databases and confirmed that Defendant was in fact Alvin Edgeworth. Law enforcement then questioned Defendant without the presence of an attorney about the robbery. He provided a voluntary, recorded statement admitting to the bank robbery. Defendant divulged that he had slept on a park

bench the night prior to the robbery, and he needed money, so he acquired a gun and went to the bank to make the illegal withdrawal.

At trial, the government presented testimony from the Belmont Bank teller, the branch manager, and the arresting officer. The government also presented surveillance footage of the robbery and a recording of Defendant's post-arrest statement. In addition to the witnesses' testimony and the video recordings regarding the robbery-related events, the government presented testimony from three experts to corroborate that Defendant was in fact the perpetrator. A DNA expert testified that she conducted a test of the orange neck warmer, and it contained Defendant's DNA. The neck warmer also contained the DNA of three other people, but the majority of the recovered DNA matched Defendant's. A different expert witness gave testimony about how GPS trackers generally function and the actual location results obtained from the specific GPS tracker given to the bank robber that day. The location results matched where Defendant was first observed by police, the route he fled, and where he was ultimately apprehended. A forensic examiner also testified; he conducted an analysis of a shoe print obtained from the bank, and the results matched the shoe worn by Defendant when he was arrested. The government did not present any fingerprint evidence.

Defendant exercised his constitutional right to remain silent at trial, did not present any witnesses, and did not provide any documentary or video evidence of his own. His defense, presented by cross-examination and argument by counsel, was simply that the government had the wrong man. After a three-day trial, the jury quickly returned a verdict finding Defendant guilty of bank robbery in violation of 18 U.S.C. § 2113(a) and guilty of brandishing a firearm during a crime of violence in violation of 18 U.S.C § 924(c)(1)(A)(ii). Now before the Court is

Defendant's post-trial motion requesting an acquittal based on the insufficiency of the evidence or a new trial based on a manifest injustice.

## II. DISCUSSION

### A. Defendant's Rule 29 Argument.

#### 1. The Standard of Decision for a Rule 29 Motion.

When reviewing a defendant's claim that there was not enough evidence to support his or her conviction, the Court "view[s] the evidence in the light most favorable to the prosecution," meaning that all reasonable inferences are construed in the prosecution's favor. Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also United States v. Peterson, 823 F.3d 1113, 1120 (7th Cir. 2016). The Court has "no authority to usurp the jury's function as finder of fact." United States v. Tavarez, 626 F.3d 902, 906 (7th Cir. 2010). This means that the Court will not disturb the jury's conviction if it finds that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

#### 2. The Government Presented Sufficient Evidence to Convict Defendant of Bank Robbery.

"To obtain a conviction for bank robbery, the government had to prove that the money was taken 'by force and violence, or by intimidation[.]'" United States v. Gordon, 642 F.3d 596, 598 (7th Cir. 2011) (quoting 18 U.S.C. § 2113(a)). Intimidation is generally defined as "the threat of force." United States v. Thornton, 539 F.3d 741, 748 (7th Cir. 2008). A review of past bank robbery convictions that have been upheld on the basis of intimidation show that "these cases share two critical facts: the defendant entered the bank and made a demand for money." Id. at 749 (synthesizing United States v. Burnley, 533 F.3d 901 (7th Cir. 2008); and United States v. Clark, 227 F.3d 771 (7th Cir. 2000)).

4

Here, Defendant does not argue for an acquittal on the basis that the government failed to prove an essential element of the crime. Nor could he. The bank's surveillance video alone supports the essential elements. It shows the robber walk up to the teller, point a gun at him, demand money, receive money, and then exit the bank. Instead, Defendant argues, as he did at trial, that the man in the video is not him. Defendant reaches his conclusion on the bases that: (1) the bank robber had his face covered, so he could not be identified; (2) Defendant wore "completely" different clothes when he was arrested; (3) the orange neck warmer had the DNA of three other people on it; and (4) the government did not prove that the construction clothes, the gun, the money, or Defendant's shoes had his DNA or fingerprints on them. Alvin Edgeworth's Mot. New Trial at 2, 4.

The government counters, arguing that these evidentiary items are not necessary to sustain Defendant's conviction. The Court agrees. There was an abundance of evidence connecting Defendant to the bank robbery. The mosaic of evidence presented by the government included: (1) the teller identifying Defendant as a physical match to the bank robber on the same day as the robbery, (2) the teller identifying the clothes in Defendant's bag as an exact match to those worn by the bank robber, (3) an arrest of Defendant within minutes and within miles of the crime scene location, (4) Defendant was arrested with the stolen money, the GPA tracker, the construction attire, and the gun in his possession, (5) shoe print analysis placing Defendant in the bank, and (6) Defendant's recorded confession that he robbed the bank. Furthermore, Defendant has not offered any explanation of how he obtained the bag containing the stolen money, the GPS tracker, and the construction clothes. Nor has he provided any evidence or argument that his voluntarily confession was untrue or illicitly obtained. In the face of this overwhelming evidence of Defendant's guilt, Defendant's argument about the lack of absolute corroboration from DNA

and fingerprint testing is precisely the type of argument that the Seventh Circuit has deemed frivolous. See, e.g., United States v. Sloan, 381 Fed. App'x 381, 609-10 (7th Cir. 2010); see also United States v. Cunningham, 393 Fed. App'x 403, 407 (7th Cir. 2010). Thus, the Court finds that sufficient evidence existed to allow a rational juror to believe beyond a doubt that Defendant robbed the Belmont Bank.

### 3. The Government Presented Sufficient Evidence to Convict Defendant of Brandishing a Firearm.

Pursuant to § 924(c)(1)(A)(ii), if anyone "brandished" a firearm during a "crime of violence" they are subject to at least seven years in prison in addition to their sentence for the crime of violence. Because a finding under the statute affects a mandatory minimum sentence, whether a defendant brandished a firearm is an element that must be found by the jury. Alleyne v. United States, 133 S.Ct. 2151, 2155 (2013); United States v. Cardena, 842 F.3d 959, 1000-01 (7th Cir. 2016). "'Brandish' means to 'display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person.'" Cardena, 842 F.3d at 1001 (quoting 18 U.S.C. § 924(c)(4)).

On the verdict form in this case, the jury explicitly found that Defendant brandished a firearm in the commission of the bank robbery. The Court's review of the evidence confirms that the evidence overwhelmingly supports the jury's finding. The teller was approximately three feet away when Defendant pointed the gun at him. The surveillance footage distinctly shows Defendant holding a gun during the robbery. The teller testified that he saw and was aware of the gun. Defendant was arrested with a gun in his waistband. And the arresting officer confirmed that the gun was operable and loaded. More than sufficient evidence exists to satisfy the first element of § 924(c)(1)(A)(ii).

A bank robbery qualifies as a crime of violence. The Seventh Circuit has held that bank "robbery by intimidation under § 2113(a) and robbery by assault by a dangerous weapon or device under § 2113(d) have as an element the use, attempted use, or threatened use of physical force against the person or property of another and thus qualify as crimes of violence under § 924(c)." United States v. Armour, 840 F.3d 904, 909 (7th Cir. 2016). The Court determined above that the evidence was sufficient for the jury to convict Defendant of bank robbery. Therefore, the government presented sufficient evidence during trial to convict Defendant of the second count under § 924(c)(1)(A)(ii), and Defendant's Rule 29 motion is denied.

**B. Defendant's Rule 33 Argument.**

**1. The Standard of Decision for a Rule 33 Motion.**

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed R. Crim. P. 33. "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994). "[C]ourts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." United States v. Kuzniar, 881 F.d 466, 470 (7th Cir. 1989). But the rule is typically "reserved for only the most extreme cases" when there is little evidence against the defendant and to let the guilty verdict stand would manifest injustice. Peterson, 823 F.3d at 1122 (internal quotations omitted).

**2. The Interest of Justice Does Not Require a New Trial.**

Defendant does not present any independent argument for why a new trial is warranted in his case; he only incorporates the same evidentiary dispute that he advanced in support of his position under Rule 29. For the reasons stated above, Defendant's argument is meritless in light

of the abundance of evidence proving his guilt. Defendant does not contend that the prosecutors or the Court committed any errors during his trial that jeopardized his protected legal rights. Therefore, Defendant's motion is void of any valid justification for a new trial, and his motion must be denied.

### III. CONCLUSION

At trial, the government produced overwhelming evidence that Defendant robbed the Belmont Bank & Trust on January 9, 2015 and brandished a firearm in the course of the robbery. Therefore, Defendant's Rule 29 motion for a judgment of acquittal notwithstanding the jury's verdict is denied. Defendant has not set forth any reason justifying a new trial; therefore, his Rule 33 motion is also denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: April 20, 2017